UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MAX RAY BUTLER** : | : | **DOCKET NO. 2:17-cv-394** |
|    B.O.P. # 09954011 | | |
| **VERSUS** | : | **UNASSIGNED JUDGE** |
| **CALVIN JOHNSON** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is the application for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241 by *pro se* petitioner Max Ray Butler ("Butler"). Butler is in the custody of the Federal Bureau of Prisons (BOP) and is currently incarcerated at the Federal Correctional Institute in Adelanto, California ("FCIA"). However, when he filed this matter he was incarcerated at the Federal Correctional Institution in Oakdale, Louisiana ("FCIO").

This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DISMISSED WITHOUT PREJUDICE**.

### I.
#### BACKGROUND

Butler claims that he was wrongfully held in FCIO's administrative segregation in the Special Housing Unit ("SHU"). Specifically, he states that he was in general population at FCIO from June 26, 2014, to April 25, 2016. Doc. 1, p. 6. He claims that he was placed in administrative segregation in SHU on April 25, 2016, for the purpose of "investigation." *Id.* He contends that his

SHU placement was not in response to a prison disciplinary infraction and that there was a lack of proper paperwork. *Id.* He complains that BOP Program Statements were not followed in regard to his SHU placement, including that he never received an incident report on the matter. *Id.* at 7–8. He contends that a backdated administrative detention order was manufactured after he filed an administrative grievance. *Id.* at 6.

Butler states that he filed several grievances regarding the alleged violations of his due process rights and alleging denial of medical care during his SHU placement. *Id.* at 6, 8, 9, 13; doc. 5, p. 2. He contends that his continued placement in SHU was an act of retaliation against him for filing grievances. Doc. 1, p. 10; doc. 5, p. 2. He claims that the SHU staff retaliated against him for filing the grievances and "court motions" by targeting him for cell searches, among other acts. Doc. 5, pp. 1–2. Butler also claims that he was denied access to the courts as the SHU staff threw away his commissary submissions and he was not able to buy paper and stamps. *Id.* He alleges that there is a disparity between the SHU commissary and that of general population, namely that some items available to general population are not available in the SHU commissary. Doc. 1, p. 11. He also states that SHU officers fail to wash inmates' jumpsuits until late in the day, bring the phone out too late in afternoon for everyone to use it, and subject inmates to cold showers. Doc. 5, p. 2. In addition, he states that SHU inmates: are only allowed one hour per day to exercise outside; spend twenty-three hours a day in their cell and eat all meals there; and have restricted access to the phone, visitation, mail, personal property, clothing, and educational, religious, and recreational programs. Doc. 1, p. 11. He also complains of the lack of natural light or fresh air in his cell. *Id.*

Butler was transferred from FCIO to FCIA on or about April 25, 2017. *Butler v. Porter*, 2:17-cv-230 (W.D. La.), doc. 23. He claims that FCIO officials are continuing their retaliation

against him as they called FCIA and had him placed in SHU at that facility. Doc. 10; doc 10, att. 1.

Butler contends that the prolonged segregation (at FCIO and FCIA) has adversely impacted his mental and physical health. He states that in November 2016, the stress of the SHU confinement caused him to have chest pains and sleeping problems, for which he was put on cardiology and neurology consult waiting lists. Doc. 1, p. 12. He contends that he has lost a total of forty-six pounds during his combined SHU confinement. Doc. 10.[1]

As relief, Butler asks the court to order his release from his confinement in FCIA's SHU. *Id.* He has also requested that two officers at FCIO be discharged in order to prevent further retaliation. Doc. 5, p. 2.

## II.
### LAW & ANALYSIS

At the onset, this court is called upon to determine whether to treat the above claims as a petition for *habeas corpus* as Butler advances, or as a civil rights complaint under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 91 S. Ct. 1999 (1971).[2] In general, a civil rights suit is the appropriate procedure by which to contest unconstitutional conditions of confinement and prison procedures, while a *habeas* petition is properly used to attack the manner a sentence is being executed and seek release from custody. *See Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997); *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992). When a claim is "unrelated to the cause of detention," *habeas* is not the appropriate remedy. *Pierre v. United States*,

---

[1] Butler voluntarily dismissed, as moot, a prior § 2241 petition filed with this court in regard to his claim that the extended confinement caused a delay in his participation in the Residential Drug Abuse Treatment Program ("RDAP") which prolonged his time in prison. *Butler v. Johnson*, 2:17-cv-180 (W.D. La.) In his motion to dismiss, Butler stated that he had been accepted into RDAP and was awaiting transfer to a facility with the program. *Id.* at doc. 10, p. 1.

[2] *Bivens* is the "federal counterpart" to 42 U.S.C. § 1983 and authorizes civil rights suits filed against federal agents or employees for a violation of a constitutional right. *Abate v. Southern Pacific Transp. Co.*, 993 F.2d 107, 110 (5th Cir. 1993).

525 F.2d 933, 935 (5th Cir. 1976). The Fifth Circuit has adopted a simple, bright-line rule for determining how to categorize such *pro se* pleadings, namely, if "a favorable determination . . . would not automatically entitle [the prisoner] to accelerated release," the proper vehicle is a civil rights suit. *Carson*, 112 F.3d at 820 (citing *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)).

Based upon a review of the pleadings herein, it is clear that Butler has asserted civil rights claims. In fact, Butler previously filed a civil rights suit with this court which is almost identical to the present § 2241 petition. *Butler v. Porter*, 2:17-cv-230 (W.D. La.). His civil rights claims relate to the conditions of his confinement and do not implicate the overall length of his confinement with the BOP. The Fifth Circuit has already found that time in SHU alone does not have an impact on the fact or duration of confinement such as to implicate § 2241. *See Dixon v. Hastings*, 202 Fed. App'x 750, 752 (5th Cir. 2006) (unpublished). Furthermore, this court does not have jurisdiction to order Butler's release from SHU at FCIA. Butler should address such claims for relief with the appropriate parties in his current place of incarceration.[3]

### III.
### CONCLUSION

For reasons stated,

**IT IS RECOMMENDED** that Butler's civil rights complaint be **DENIED AND DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

---

[3] An inmate's transfer from an offending institution generally renders his claims for injunctive relief moot. *Cooper v. Sheriff, Lubbock Cty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (per curiam). "[A]ny suggestion of relief based on the possibility of transfer back . . . is too speculative to warrant relief." *Fluker v. King*, 679 Fed. App'x 325, 328 (5th Cir. 2017) (unpublished) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)). Should Butler choose to pursue these claims in another civil rights action, he should be aware that his claim for injunctive relief, seeking discharge of officers at FCIO in order to prevent further retaliation, is rendered moot by his transfer.

recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers this 13th day of September, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE